Joseph J. Joyce (Bar No. 4857
Clint A. McAdams (Bar No. 11156)
**J. JOYCE & ASSOCIATES**
Attorneys for Defendants
10813 South River Front Parkway, Suite 230
South Jordan, Utah 84095
Telephone: (801) 302-2255
jjj@jjoycelawfirm.com
cam@jjoycelawfirm.com

---

## IN THE UNITED STATES DISTRICT COURT OF CENTRAL DIVISION

## STATE OF UTAH

| | |
|---|---|
| ONSET FINANCIAL, INC., A UTAH CORPORATION,<br><br>                    Plaintiff<br><br>vs.<br><br>NY-MAC ENTERPRISES, INC., A MICHIGAN CORPORATION, DOUGLAS J. NYLANDER, AN INDIVIDUAL,,<br><br>                    Defendants. | **DEFENDANTS' MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**<br><br><br>Civil No. 2:15-cv-00804<br><br>Judge David O. Nuffer |

Defendants, by and through counsel, submit Defendants' Memorandum in Opposition to Motion for Summary Judgment.

### **Introduction**

This Court should deny Onset's motion for summary judgment because Onset cannot prove the elements of a breach of contract.

Onset failed to perform its part of the bargain in the Lease and the Lease should not be enforced against NY-MAC. When the parties entered into the contract, the contract lacked consideration because Onset failed to timely purchase the equipment, and then failed to deliver equipment in working condition.

In addition, the Court should deny the motion for summary judgment because Onset is not the proper party to bring the motion. Onset assigned the contract to Prime Alliance, Bank, Inc. Therefore the Court cannot grant summary judgment because of the possibility of two recoveries in the same amounts against NY-MAC.

The Court should also deny the motion for summary judgment because Onset has acted in bad faith, and because the contract is unenforceable. From the outset, Onset has failed to live up to its end of the contract. Onset failed to timely purchase and deliver equipment, charged NY-MAC for the time period when Onset had not even purchased the equipment, and charged NY-MAC for fees without proof that Onset had paid said fees, or charged NY-MAC for fees that should not have been incurred. Moreover, the terms of the contract are so onerous and one-sided that the Court should not enforce the contract.

## Response to Statement of Elements and Undisputed Material Facts

Defendants have attempted to respond to the legal elements section even though the elements include facts and arguments that Defendants believe should not have been included. Defendants agree that the legal issue in the case is whether there is a breach of contract.

The elements of Onset's breach of contract claim against defendants are:

1. There is a contract between Onset and defendants NY-MAC and Nylander;

   **Response:** Undisputed that a contract is a legal element that must be proved. Defendants dispute that there is an enforceable contract and that the contract is between Onset and Defendants.

2. Onset has performed its obligations under the contract;

   **Response:** Undisputed that performance is a legal element that must be proved. Disputed that Onset performed its obligations under the contract.

3. Defendants NY-MAC and Nylander breached the contract by not performing their obligations; and

   **Response:** Undisputed that breach is a legal element that must be proved. Defendants dispute that they materially breached the contract.

4. Onset has been damaged because of defendants' breach of the contract. *America West Bank Members, L.C. v. Utah*, 2014 UT 49, ¶15, 342 P.3d 224, 230-31; and *Bair v. Axiom Design, LLC*, 2001 UT 20, ¶14, 20 P.3d 388, 392.

   **Response:** Undisputed that damages are a legal element of the case that must be proved. Disputed that Onset has been damaged.

**A Contract Exists Between Onset and Defendant, as Evidenced by the Lease and the Guaranty.**

A. <u>Element</u>: The Lease and the Guaranty are contracts between Onset and defendants NY-MAC and Nylander.

B. <u>Citation</u>: *Bair v. Axiom Design, LLC*, 2001 UT 20, ¶14, 20 P.3d 388, 392

*Glacier Land Co. LLC v. Claudia Klawe & Associates, L. L. C.*, 2006 UT App 516, 154 P.3d 852.

C. <u>Material Facts</u>:

1. On or about February 24, 2015, defendant NY-MAC Enterprises, Inc. ("NYMAC"), as lessee, executed and delivered to Onset, as lessor, a Master Lease Agreement No. OFI0745232, dated February 24, 2015 (the "Master Lease"), a copy of which is attached as Exhibit A to Onset's Complaint filed herein. (Answer at ¶6) (Declaration of Remington Atwood (hereafter "Atwood Decl.") at¶ 6).

**Response No. 1:** Undisputed that the documents are dated February 24, 2015. Defendants dispute that the Property was delivered on said date, and that all of the lease documents were actually executed on said date. (Dec. of Doug Nylander ¶¶ 6-14, attached as Exhibit A).

2. In connection with the Master Lease, defendant NY-MAC, as lessee, executed and delivered to Onset, as lessor, Schedule No. 001 to Master Lease Agreement No. OFI0745232, dated February 24, 2015, including Amendment No. 1 to Lease Schedule No. 001 dated February 27, 2015 (collectively the "Schedule"), a copy of which is attached as Exhibit "C" to Onset's Complaint filed herein, wherein defendant NY-MAC promised to pay to Onset amounts described in the Schedule and leased from Onset: (a) a Paver, described as one Berkamp Model M1-E Slurry Seal/Microsurfacing Paver with 9'-15' Screed including Spreader Box, serial no. 000M1E-13A-0103, (the "Paver"); and (b) four trucks, described as: (i) one 1999 Peterbilt Truck with Materials Support Units (Tenders), VIN No. 1XPGDU9X6XD502555, (ii) one 1999 Peterbilt Truck with Materials Support Units (Tenders), VIN No. 1 XPGDU9X4XD502554, (iii) one 1999

Peterbilt Truck with Materials Support Units (Tenders), VIN No. 1XPGDU9X2XD502553, and (iv) one 1999 Peterbilt Truck with Materials Support Units (Tenders), VIN No. 1XPGDU9XXXD502543, as more particularly described in the Schedule (the above identified Peterbilt Trucks described in subparagraphs (b)(i) through (b)(iv) are referred to collectively as the "Vehicles." The Vehicles and the Paver are referred to collectively as the "Property"). (Answer at ¶ 8) (Atwood Decl. at¶ 7)

**Response No. 2:** Undisputed that the documents are dated February 24, 2015. Defendants dispute that the Property was delivered on said date, and that all of the lease documents were actually executed on said date. (Dec. of Doug Nylander ¶¶ 6-14). Defendants dispute that on February 24, 2015 Onset purchased the Property. The failure to timely purchase the Property was in breach of the Lease. (Dec. of Doug Nylander ¶6-14).

3. In connection with the Schedule, defendant NY-MAC executed and delivered to Onset an Acceptance and Delivery Certificate to Lease Schedule No. 001 (the "Certificate"), a copy of which is attached as Exhibit "D" to Onset's Complaint filed herein. (Answer at ¶9) (Atwood Decl. at ¶8).

**Response No.3:** Defendants dispute this fact. The Acceptance and Delivery are date February 27, 2015, however, NY-MAC did not receive or take possession of all of the equipment until early May of 2015. (Dec. of Doug Nylander ¶¶6-14).

4. In connection with the Schedule, defendant NY-MAC executed and delivered to Onset an ACH Authorization Form (the "ACH Authorization"), a copy of which is attached as Exhibit "E" to Onset's Complaint filed herein. The Master Lease, the

Schedule, the MPPA, the Certificate, and the ACH Authorization are referred to hereafter collectively as the "Lease" or the "Lease Agreement"). (Answer at ¶10) (Atwood Decl. at ¶9)

**Response No. 4:** Defendants dispute this fact. Defendants admit that NY-MAC executed an ACH Authorization Form. Defendants dispute that the Master Lease, the Schedule, the MPPA, the Certificate, and the ACH Authorization comprise the entire agreement or the agreements between the Parties. (Dec. of Doug Nylander ¶¶5-14).

5. Defendant Douglas J. Nylander ("Nylander") made, executed and delivered to Onset his Continuing and Unconditional Guaranty, dated February 24, 2015 ("Guaranty"), wherein defendant Nylander guaranteed payment and performance of all of the obligations of defendant NY-MAC under the Lease. A true and correct copy of the Guaranty is attached as Exhibit "F" to Onset's Complaint filed herein. (Answer at ¶11) (Atwood Decl. at ¶10)

**Response No. 5:** Undisputed that Doug Nylander executed said document. Disputed that the documents were executed on said date. (Dec. Doug Nylander).

6. Defendant NY-MAC defaulted in its covenants and obligations under the Lease in that NY-MAC failed to make various payments as required by the Lease. (Atwood Dec. at ¶11)

**Response No. 6:** Disputed. This is not a fact, rather it is a legal conclusion. Mr. Atwood is not qualified to determine whether NY-MAC defaulted, that is a determination for the Court.

Moreover, the Defendants' Statement of Additional Facts sets forth facts that show that there is a question of fact as to whether the contract between the parties was enforceable, whether Onset breached the contract first, and whether Onset is the real party in interest.

7.  NY-MAC failed to pay sales taxes on monthly lease payments for the months of September 2015 and each month thereafter. The Schedule identifies Texas as the location of the Property. Texas assesses sales taxes on monthly lease payments at the rate of 8.25%. The assessed sales tax on the monthly lease payment was $2,150.62 for the month of September 2015, based on the monthly rental payment of $26,068.10. Beginning in October 2015, the assessed sales tax was reduced to $1,377.37 per month because Texas required that sales taxes for the Vehicles be paid at the time of registration, thus the sales taxes of $1,377.37 per month represents the sales taxes due on the portion of the Monthly Rental Payment attributable to the Paver. Defendant NY-MAC paid the sales taxes assessed on the Monthly Rental Payments up to and including the August 2015 monthly payment. However, defendants did not pay the sales tax assessed on the September 2015 Monthly Rental Payment and have not paid the sales tax assessed on any of the Monthly Rental Payments thereafter. Onset has paid sales taxes to the State of Texas for the months of September 2015 through November 2015 in the total amount of $4,905.36, and sent invoices to defendants for these amounts, copies of which are attached as Exhibit 1 to the Atwood Declaration. Defendants have not paid these amounts. (Atwood Decl. ¶12)

**Response No. 7:**  Disputed. The Acceptance and Delivery identify the property location as Texas. (Lease Schedule No. 001). This was the location of the property at the time of sale. (Dec. Doug Nylander ¶8-9).

However, the Lease Schedule allows the property to be transported to other locations: "Notwithstanding Section 9(a) of the Master Lease, Property leased under the Schedule will be in various locations within the Continental United States. Lessee agrees to provide within ten (10) days written notice from Lessor, a list with current location of any and all Property being leased under the Schedule." (Lease Schedule).

The property was transported to other states and registered Michigan. (Dec. Doug Nylander ¶¶ 19-25). Onset should not have paid sales tax to Texas. Onset never provided any documents to show that it had titled the equipment in any State, nor that it had paid any sales title fees or registration fees. (Dec. Doug Nylander ¶¶ 19-25).

NY-MAC disputed the variable monthly sales tax assessments and Onset never explained the differences in monthly sales tax amounts, or if Onset had been overcharging for those amounts. (Dec. Doug Nylander ¶ 18).

8.  In addition, NY-MAC failed to pay the registration fees for the leased equipment. After defendants notified Onset that the Vehicles had been titled in the State of Michigan, Onset proceeded to register the Vehicles in Onset's name in Michigan. Registration fees assessed by the State of Michigan in relation to this registration, and paid by Onset, are $300.02. Defendants have not paid these registration fees and sales taxes. (Atwood Decl. at¶ 13)

**Response No. 8:** Disputed. NY-MAC registered the vehicles in Michigan in April 2015 and paid to have those vehicles registered. (Dec. Doug Nylander ¶25; see also Michigan Registration Forms, attached as Exhibit B).

Onset has not invoiced NY-MAC for any alleged registration of the Vehicles in Michigan. (Dec. Doug Nylander ¶27); (see also Declaration Atwood, no statement that invoiced).

Defendants also dispute that they notified Onset that the Vehicles had been titled in the State of Michigan. (Dec. Doug Nylander ¶28). The Vehicles were not titled in Michigan by NY-MAC because NY-MAC does not hold the title to the Vehicles. (Dec.of Doug Nylander ¶28).

9. In addition, the State of Michigan assesses sales taxes on monthly lease payments at the rate of 6%. Based on the registration of the Vehicles in Michigan in February 2016, the Michigan assessed sales tax on the Monthly Rental Payments is $1,564.09 per month. Defendants have not paid Onset for this amount. (Atwood Decl. at¶ 14)

**Reponse No. 9:** Onset never provided any documentation nor invoiced NY-MAC for the registration of the equipment in Michigan. (Dec. Doug Nylander ¶ 27). NY-MAC had already registered the equipment in Michigan. (Dec. Doug Nylander ¶¶ 25-26).

10. In addition, NY-MAC failed to pay the Monthly Rental Payment that was due under the Lease Agreement on March 1, 2016. The Monthly Rental Payment that was due on March 1, 2016 is the amount of $26,068.10, plus applicable sales taxes, as

shown on the Schedule. Defendants did not pay this amount. A copy of the history of all payments made to Onset by defendants in relation to the Lease is attached as Exhibit 2 to the Atwood Declaration. (Atwood Decl. at¶ 15).

**Response No. 10:**  Undisputed that Defendants did not make the monthly payment. However, according to the Assignment Letter, all of the payments are due to Prime Alliance Bank, Inc. (Dec. Doug Nylander ¶ 19).

11. In addition, defendants are in default of their obligations because defendants cancelled or rejected ACH payments for sales tax and monthly rental, contrary to the Schedule and the ACH Agreement, and Onset failed to receive the required payment by electronic transfer. (Atwood Decl. at ¶ 16)

**Response No. 11:**  Disputed. This is not a fact, rather it is a legal conclusion. Mr. Atwood is not qualified to determine whether NY-MAC defaulted, that is a determination for the Court.

The property was transported to Michigan where it was to be primarily located. (Dec. Doug Nylander ¶¶ 19-25). Onset should not have paid sales tax to Texas. Onset never provided any documents to show that it had titled the equipment in any State, nor that it had paid any sales title fees or registration fees. (Dec. Doug Nylander ¶¶ 19-25).

NY-MAC disputed the variable monthly sales tax assessments and Onset never explained the differences in monthly sales tax amounts, or if Onset had been overcharging for those amounts. (Dec. Doug Nylander ¶ 18).

Moreover, the Defendants' Statement of Additional Facts sets forth facts that show that there is a question of fact as to whether the contract between the parties was

enforceable, whether Onset breached the contract first, and whether Onset is the proper party to bring the lawsuit.

12. According to Section 19 of the Master Lease, on default Onset, as lessor, may "do any one or more of the following" including:

> (h) declare immediately due and payable all amounts due or to become due hereunder for the full term of the Lease (including any renewal period or purchase options which Lessee has contracted to pay);

See Master Lease at ¶19(h) (Exhibit A to Compl.). (Atwood Decl. at¶ 17).

**Response No. 12:** Undisputed that the Lease so states. Disputed that Onset is the lessor because it assigned its interest to Prime. (Dec. Doug Nylander ¶ 19).

13. The amount owed by defendant NY-MAC under the Lease, and guaranteed by defendant Nylander under the Guaranty, is the sum of $1,193,389.55, consisting of: (i) twenty five (25) unpaid Base Period Monthly Rental Payments in the amount of $26,068.10 each for a total of $651,702.50; (ii) eighteen (18) unpaid Extension Period Monthly Rental Payments in the amount of $26,068.10 each for a total of $469,225.80; (iii) sales taxes on the remaining unpaid Monthly Rental Payments in the amount of $67,225.87; (iv) Texas sales taxes on Monthly Rental Payments for the months of September 1, 2015 to November 1, 2015 in the amount of $4,905.36; and (v) registration fees paid to the State of Michigan in relation to the Vehicles in the amount of $300.02 (less deposits held by Onset in the amount of $26,068. These amounts accrue interest at the rate of eighteen percent (18%) per annum, from September 3, 2015, until paid. (Atwood Decl. at ¶18).

**Response No. 13:** Disputed. This is not a fact, rather it is a legal conclusion. Mr. Atwood is not qualified to determine whether NY-MAC defaulted, that is a determination for the Court.

Moreover, the Defendants' Statement of Additional Facts sets forth facts that show that there is a question of fact as to whether the contract between the parties was enforceable, whether Onset breached the contract first, and whether Onset is the proper party to bring the lawsuit.

As more fully argued below, Plaintiff has failed to prove its breach of contract cause of action, therefore, there are no amounts owing. Moreover, any amounts owed are due to Prime as Onset's Successor Lessor. (Dec. Doug Nylander ¶ 19).

14. In the Lease and the Guaranty, defendants agreed to pay to Onset all attorneys' fees and costs incurred by Onset in collecting the amounts owed under the Lease. (Atwood Decl. at ¶19.)

**Response No. 14:** Disputed. This is not a fact, rather it is a legal conclusion. Mr. Atwood is not qualified to determine whether NY-MAC defaulted, that is a determination for the Court.

Moreover, the Defendants' Statement of Additional Facts sets forth facts that show that there is a question of fact as to whether the contract between the parties was enforceable, whether Onset breached the contract first, and whether Onset is the proper party to bring the lawsuit.

As more fully argued below, Plaintiff has failed to prove its breach of contract cause of action, therefore, there are no amounts owing. Any amounts owed are due to Prime as Onset's Successor Lessor. (Dec. Doug Nylander ¶ 19).

15. Onset has incurred costs and fees to date in connection with collection of the amounts owed under the Lease in the amount of $22,316.10. (See Declaration in Support of Attorneys' Fees)

**Response No. 15:** Disputed. This is not a fact, rather it is a legal conclusion. Mr. Atwood is not qualified to determine whether NY-MAC defaulted, that is a determination for the Court.

Moreover, the Defendants' Statement of Additional Facts sets forth facts that show that there is a question of fact as to whether the contract between the parties was enforceable, whether Onset breached the contract first, and whether Onset is the proper party to bring the lawsuit.

As more fully argued below, Plaintiff has failed to prove its breach of contract cause of action, therefore, there are no amounts owing. Any amounts owed are due to Prime as Onset's Successor Lessor. (Dec. Doug Nylander ¶ 19)..

## Statement of Additional Material Facts

1. The Acceptance and Delivery were dated February 27, 2015, however, NY-MAC did not receive or take possession of all of the equipment until early May of 2015. (Declaration of Doug Nylander ¶6-14).

2. Onset did not purchase the Property until March 24, 2015, even though it had NY-MAC execute documents and back-date them for February 27, 2015. (Declaration of Doug Nylander ¶6-14).

3. Due to the failure of Onset to purchase the Property on the date of execution of the documents, NY-MAC could not use the equipment and suffered damages. (Declaration of Doug Nylander ¶10-13).

4. When NY-MAC went to obtain the Property, one of the Vehicle's computer did not work and had to be repaired. The Vehicle is useless without a computer that functions. NY-MAC had to pay for the repairs. The repairs were not completed until April 2015. NY-MAC suffered lost income and profits due to the delay. (Declaration of Doug Nylander ¶¶ 10-13).

5. Even though Onset did not purchase the Property until March 24, 2015, and NY-MAC did not receive all of the Property in working order until early May of 2015, and Prime was now the Successor Lessor, Onset invoiced NY-MAC for $37,828.32. (Declaration Doug Nylander ¶¶6-18; (Onset Invoice dated 3/24/2015, attached as Exhibit 3 to Declaration of Doug Nylander).

6. The March 24, 2015 Invoice charged NY-MAC for rent from February 27, 2015 in the amount of $28,674.91 even though Onset knew that it had not purchased the

Property until March 24, 2015, and that NY-MAC had not received the Property until early May of 2015.

7. The March 24, 2015 Invoice also charges NY-MAC for Texas Sales Tax two times even though again, NY-MAC had not received all of the Property in working condition until early May of 2015.

8. When NY-MAC questioned the March 24, 2015 Invoice and charges, Onset sent a Notice of Default on April 13, 2015. (Declaration of Doug Nylander ¶17); (Onset April 13, 2015 Notice of Default, attached as Exhibit 4 to Declaration of Doug Nylander). Onset had increased the amount of the first payment from $37,828.32 to $66,047.04 even though Onset charged NY-MAC for amounts it knew were not owed. *Id*.

9. On or about February 27, 2015, Onset notified NY-MAC by letter ("Assignment Letter") that the Lease was assigned and the Property had been sold to Prime Alliance Bank, Inc ("Prime"). (Assignment Letter dated February 27, 2015, Exhibit 5 to Declaration of Doug Nylander).

10. With respect to payment, the Assignment Letter states that NY-MAC is to:

. . . to pay directly to the Successor Lessor (Prime) at the address set forth below, all amounts required to be paid by the Lessee (NY-MAC) under the Lease including, but not limited to, all lease payments, casualty, loss or termination payments, accelerated payments upon default, attorney's fees and expenses of collection and enforcement of the Lease.

All amounts from time to time payable under the Lease to the Lessor shall be paid to the Successor Lessor at its office at 1868 South 500 West, Woods Cross, UT 84087 as follows: Thirty-five (35) consecutive Base Period Monthly Rental payments of $26,068.10 commencing on April 1, 2015 through and including the payment due on February 1, 2018. (Assignment Letter, Exhibit 5 to Declaration of Doug Nylander).

11. NY-MAC made all monthly rental payments to Prime until March 2016. NY-MAC did not stop any withdrawal by Prime from the electronic transfer of the bank until March 1, 2016, because of Onset's conduct in threatening default, filing the lawsuit, and filing the motion for summary judgment. (Declaration of Doug Nylander ¶29).

12. Onset charged NY-MAC $26,152.00 to title and license the Vehicles in the State of Texas, when the Vehicles were not in Texas. (August 3, 2015 Invoice, Exhibit C); (August 18, 2015 Letter, Exhibit D); (Declaration of Doug Nylander ¶21-25).

13. When NY-MAC requested proof of payment of the title and license fees in Texas, Onset did not provide that information and has never provided that information. (Declaration Doug Nylander ¶¶22-23).

14. Onset took the position that the Property could not be transported outside of Texas, when Onset knew that NY-MAC intended to transport the Property to other states. (Complaint ¶¶ 26-27); (Declaration Doug Nylander ¶¶ 19-21).

15. The Lease Schedule No. 001 specifically states that the Property "will be in various locations within the Continental United States." (Lease Schedule NO. 001, Ex C to Complaint).

**Lease Documents**

16. The Master Lease states that "Lessee shall pay as rent for use of the Property, aggregate rentals equal to the sum of all the Monthly Rentals and other payments due under the Lease for the entire Base Period." (Master Lease, Section 3).

17. The Master Lease Agreement allows the Lessor to declare that documents other than a signed acceptance of delivery "constitute the Acceptance and Delivery Certificate

for all purposes under the Lease, and the Date of Acceptance of the lease shall be the date determined by Lessor in its sole discretion which shall not be earlier that the date of the last Certificate. (Master Lease Agreement, Section 8.c.).

18. Onset also disclaimed liability for any damages even if Onset knew of the likelihood of the damages occurring. (Master Lease Agreement, Section 10.b.)

19. The Master Lease Agreement waives any rights of NY-MAC to pursue the rights and remedies typically conferred upon a Lessee by Utah's Uniform Commercial Code, U.C.A. § 70A-22-508-522 including NY-MAC's rights to:

> . . . (ii) repudiate the lease, (iii) reject the Property, (iv) revoke acceptance of the Property, (v) recover damages from Lessor for any breaches of warranty or for any other reason, . . . (vii) deduct all or any part of any claimed damages resulting from Lessor's default, if any, under the Lease, . . . (ix) recover any general, special, incidental or consequential damages, for any reason whatsoever; and (x) commence legal action against Lessor for specific performance, replevin, detinue, sequestration, claim and delivery or the like for any Property identified in the Lease. To the extent permitted by applicable law, Lessee also hereby waives any rights now or hereafter conferred by statute or otherwise which may require Lessor to sell, lease or otherwise use any Property in mitigation of Lessor's Damages as set forth in Section 19 hereof or which may otherwise limit or modify an of Lessor's rights or remedies in that section. (Master Lease Agreement Section 15).

20. In contrast to NY-MAC's inability to the rights afforded by Utah's UCC, the Master Lease Agreement affords Onset the right to "exercise any other right or remedy which be available to it under the Uniform Commercial Code or any other applicable law." (Master Lease Agreement, Section 19.k.).

## ARGUMENT

### I. ONSET FAILED TO PERFORM ITS PART OF THE BARGAIN IN THE LEASE AND THE LEASE SHOULD NOT BE ENFORCED AGAINST NY-MAC.

In order to prove a breach of contract, Onset must prove: "(1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages." *Am. W. Bank Members, L.C. v. State*, 2014 UT 49, ¶15, 342 P.3d 224, 230-31. Onset did not perform a material part of the Lease Agreement, namely Onset failed to timely purchase the equipment to be leased, and the equipment was not in working condition.

Onset also materially breached the contract between the parties first by failing to timely purchase the property, by charging NY-MAC rental payments and fees for the time NY-MAC did not have the Property, and for declaring NY-MAC in default for not paying the monies that were clearly not owed and then extorting additional monies out of NY-MAC under threat of terminating the Lease.

#### A. Onset Failed To Perform A Material Part Of The Agreement And Therefore There Is A Failure Of Consideration.

Onset cannot prove that there was a breach of the Lease by NY-MAC, because as the party seeking to recover, Onset failed to perform its obligations under the Lease. See, *Am. W. Bank Members, L.C. v. State*, 2014 UT 49, ¶15. NY-MAC was supposed to receive the Property on February 24, 2015, the date most of the Lease documents were dated. Onset failed to purchase the Property by that date, and did not complete the purchase until on or about March 24, 2015. Onset knew that time was of the essence to

NY-MAC who needed the equipment to perform work on construction projects that NY-MAC was working on. NY-MAC was harmed and damaged by Onset's failure to meet the terms of the Lease and timely purchase the Property. Onset failed to perform its obligation under the Lease to timely purchase the Property, and cannot prove a breach of contract.

In addition, once the Property was finally purchased by Onset, NY-MAC discovered that a computer on one of the trucks was not functioning properly. Without a properly functioning computer the truck cannot be used on the construction site. NY-MAC paid for the repairs of the computer, but was further delayed on its ongoing construction projects, and was further harmed and damaged by Onset's failure to perform its obligations under the Lease. Onset failed to deliver acceptable equipment under the Lease, and failed to perform a material obligation under the contract. Onset cannot meet its burden to prove a breach of contract.

### B. Onset Materially Breached The Contract First, Relieving NY-MAC Of Its Duty To Perform Under The Contract.

For similar reasons as mentioned above, Onset materially breached the contract first, relieving NY-MAC of its duty to perform under the contract.

"When one party to a valid contract commits an 'uncured material failure' in its performance of the contract, the non-failing party is relieved of its duty to continue to perform under the contract." *Aquagen Int'l, Inc. v. Calrae Tr.*, 972 P.2d 411, 414 (Utah 1998); citing *Restatement (Second) of Contracts*, § 237 (1981). "This general rule is based on the principle 'that where performances are to be exchanged under an

exchange of promises, each party is entitled to the assurance that he will not be called upon to perform his remaining duties of performance with respect to the expected exchange if there has already been an uncured material failure of performance by the other party.'" *Id; citing Restatement (Second) of Contracts* § 237, cmt. b. Here, Onset failed to timely purchase the Property, and the Property was not in good working condition.

Moreover, despite Onset's knowledge that it had breached the contract and failed to live up to its obligations under the Lease, Onset charged NY-MAC rental payments and fees beginning February 24, 2015 for a total of $37,828.32. Onset charged NY-MAC for the time that NY-MAC did not have the Property because Onset had failed to purchase it on time. In addition, when NY-MAC questioned the amount of the invoice given Onset's failures, Onset declared that NY-MAC was in default, and sent an Invoice for $66,047.04. Onset used the threat of losing the equipment during an extremely busy time for NY-MAC to extort additional payment from NY-MAC, even though those amounts should not have been owed. Onset clearly materially breached the contract first, and cannot now complain that NY-MAC has subsequently breached the Lease.

### C. Onset Is Not The Proper Party To Bring The Lawsuit Because It Assigned The Lease To Prime.

In litigation, defendants have "the right to have a cause of action prosecuted by the real party in interest in order for the judgment to preclude any action on the same demand by another." *Green v. Louder*, 2001 UT 62, ¶ 43, 29 P.3d 638, 649 (Utah 2001); citing *Shaw v. Jeppson,* 121 Utah 155, 239 P.2d 745, 748 (Utah 1952); *see also*

Utah Rules of Civil Procedure and FRCP 17 & 19; see NY-MAC's Answer, Affirmative Defense Four & Seventeen. "The purpose of this rule is to guard against the entry of judgments which might 'prejudice the rights of such parties in their absence.'" *Green v. Louder*, 2001 UT 62, ¶44; citing *Sanpete County Water Conservancy Dist. v. Price River Water Users Ass'n*, 652 P.2d 1302, 1306 (Utah 1982). It "precludes any action on the same demand by another and permits the defendant to assert all defenses or counterclaims available against the real owner of the cause." *Shaw*, 239 P.2d at 748.

On February 27, 2015, Onset notified NY-MAC that Onset had assigned the Lease and sold the Property to Prime. (Assignment Letter, Ex. 5 to Doug Nylander's Declaration). All amounts required to pay under the Lease were to be paid by NY-MAC to Prime. *Id.* NY-MAC made the monthly payments to Prime in accordance with the assignment up until March 2016.

Onset is not the real party in interest because it assigned the Lease to Prime. Prime is not a party to the action. Prime has indicated to NY-MAC that it may foreclose on the Lease. There is the real danger that if the Court were to find in Onset's favor, that Prime would be entitled to also attempt to recover monies allegedly owed, and or to take possession of the Property. The Court should dismiss Onset's Complaint because it is not the property party, and or because Onset failed to join an indispensable party.

## II. THE COURT SHOULD DECLINE TO ENFORCE THE CONTRACT BECAUSE ONSET HAS ACTED IN BAD FAITH AND/OR BECAUSE THE CONTRACT IS UNENFORCEABLE.

The Court should not enforce the Lease between Onset and NY-MAC because Onset has failed to act reasonably and in good faith in enforcing contractual provisions, and because the terms of the contract are unenforceable.

### A. The Court Should Not Enforce The Contract Because Onset Has Acted In Bad Faith.

It is a well-recognized principle in Utah law that in every contract inheres the duty of good faith and fair dealing. See *Olympus Hills Shopping Ctr. v. Smith's Food & Drug Ctrs.*, 889 P.2d 445, 450 (Utah Ct. App. 1994). One party cannot take action that "denies the other a reasonably expected benefit of the bargain." *Id.* Several cases in Utah have found that a party has exercised a contractual power in bad faith. *Resource Management Co. v. Weston Ranch and Livestock Co.*, 706 P.2d 1028, 1037 (Utah 1985) (decision to terminate contract under express contractual right must be made in good faith); *Leigh Furniture and Carpet Co. v. Isom*, 657 P.2d 293, 311 (Utah 1982) (corporation acted in bad faith in failing to approve prospective business partners without considering their merits, even though contract allowed corporation complete discretion in approving prospective partners); *Campbell v. State Farm Mut. Auto. Ins. Co.*, 840 P.2d 130, 138-39 (Utah App. 1992) (insurance company acts in bad faith by refusing to settle litigation against insured even though contract allows insurance company power to evaluate and adjust claims).

Based on Onset's immediate failure to abide by the terms of the Lease, it is clear that Onset never intended to deal with NY-MAC in good faith. As previously explained, even though Onset knew that it had not timely purchased the Property, it invoiced NY-MAC rental payments and fees for the time period that NY-MAC did not have the Property. Then when NY-MAC reasonably requested an explanation for the Invoice, Onset declared that NY-MAC was in default and increased the amount invoiced to nearly double. Onset also has never explained the changes to the monthly sales tax assessments, despite NY-MAC's challenges to those varying amounts. Onset then used NY-MAC's need for the Property consisting of construction equipment to extort additional monies out of NY-MAC.

Onset has consistently taken unreasonable positions during the Lease period. Even though Onset knew NY-MAC intended to transport the Property to other states in order to complete construction projects, Onset allegedly attempted to title and register the Property in Texas.

When Onset attempted to collect $26,152.00 for the title and registration in Texas, NY-MAC reasonably requested proof that the Onset had actually titled and registered the Property in Texas. This was because NY-MAC had already registered the Vehicles in Michigan. Despite requests, Onset has never provided any documentation that it actually registered or titled the equipment in Texas. Onset has never provided any documentation to NY-MAC that it registered or titled the equipment in Michigan. These failures by Onset are significant because without registration, NY-MAC could not use the equipment.

Onset also alleged that NY-MAC wrongfully transported the Property outside of Texas, when Onset knew that NY-MAC intended to use the Property in other states, and that the Lease Schedule permitted NY-MAC to transport the Property. Onset took the position that NY-MAC was in breach for transporting the Property out of Texas even though Onset's own documents permitted said transportation. Onset's unreasonable position that contradicted its own Lease documents manifests Onset's intention to not live up to the Lease.

Onset has continually dealt in bad faith and has demonstrated that it never intended to honor the contract between the parties. For this reason, the Court should deny Onset's motion for summary judgment.

### B. The Court Should Not Enforce The Contract Because The Terms Of The Contract Are Unconscionable Or Unenforceable.

The Court should not enforce the contract because the Lease is unconscionable. "[If a contract is unconscionable, in whole or in part, the court may, on equitable grounds, refuse to enforce the unconscionable provisions, or it may construe the contract to avoid an unconscionable result." *Bekins Bar V Ranch v. Huth*, 664 P.2d 455, 459 (Utah Sup.Ct. 1983). "Unconscionability, while defying precise definition, "'has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.'" *Ryan v. Dan's Food Stores, Inc.*, 972 P.2d 395, 402 (Utah 1998); quoting *Resource Management Co.*, 706 P.2d at 1043 (*quoting Williams v. Walker-Thomas Furniture Co.,* 121 U.S. App. D.C. 315, 350 F.2d 445, 449 (D.C. Cir. 1965)).

There is a two pronged approach to determine whether a contract is unconscionable. *Id.* "The first prong--substantive unconscionability--focuses on the agreement's contents. The second prong--procedural unconscionability--focuses on the formation of the agreement." *Id.* The determination of unconscionability is determined in light of the two purposes of the doctrine "prevention of oppression and unfair surprise." *Id.* "Substantive unconscionability focuses on 'the contents of an agreement, examining the 'relative fairness of the obligations assumed.'" *Id.* (quoting *Resource Management*, 706 P.2d at 1043).

The Master Lease Agreement purportedly allows NY-MAC an opportunity to inspect the Property, however, that inspection right is illusory because even if the Property was unacceptable to NY-MAC, the Lease allowed Onset to declare that NY-MAC had accepted the Property. The Lease allows Onset to declare that documents other than a signed acceptance of delivery by NY-MAC constitute acceptance:

> . . . that Lessee's failure to execute and deliver an Acceptance and Delivery Certificate for any Property **shall not affect the validity and enforceability of the Lease with respect to the Property.** If Lessee has executed and delivered a Master Progress Payment Agreement, Lessor may, in its sole discretion, at any time by written notice to Lessee declare all prior Certificates executed in connection with the Master Progress Payment Agreement to be and constitute the Acceptance and Delivery Certificate for all purposes under the Lease, and the **Date of Acceptance of the lease shall be the date determined by Lessor in its sole discretion** which shall not be earlier than the date of the last Certificate." (Master Lease Agreement, Section 8.c.).

In effect, Onset could unilaterally force NY-MAC to accept the Property, even if it did not meet NY-MAC's specifications or was not in working condition. This explains why Onset insisted that NY-MAC and Mr. Nylander execute and back-date documents,

even though Onset had not purchased the Property. In this case, Onset had NY-MAC execute the Lease documents, including an acceptance, prior to Onset purchasing the Property, and prior to NY-MAC inspecting the Property. NY-MAC did so in good faith believing that Onset would purchase the Property timely. In fact, one of the pieces of equipment had to be repaired prior to NY-MAC using it. Yet NY-MAC had to pay for the repair, and Onset charged NY-MAC for the time period that NY-MAC did not have the equipment and during the time the equipment was not functioning properly.

Onset also disclaimed liability for any damages even if Onset knew of the likelihood of the damages occurring. (Master Lease Agreement, Section 10.b.) In conjunction with the disclaimer in Section 10.b., Onset's Master Lease Agreement waives any rights of NY-MAC to pursue the rights and remedies typically conferred upon a Lessee by Utah's Uniform Commercial Code, U.C.A. § 70A-22-508-522 including NY-MAC's rights to:

> . . . (ii) repudiate the lease, (iii) reject the Property, (iv) revoke acceptance of the Property, (v) recover damages from Lessor for any breaches of warranty or for any other reason, . . . (vii) deduct all or any part of any claimed damages resulting from Lessor's default, if any, under the Lease, . . . (ix) recover any general, special, incidental or consequential damages, for any reason whatsoever; and (x) commence legal action against Lessor for specific performance, replevin, detinue, sequestration, claim and delivery or the like for any Property identified in the Lease. To the extent permitted by applicable law, Lessee also hereby waives any rights now or hereafter conferred by statute or otherwise which may require Lessor to sell, lease or otherwise use any Property in mitigation of Lessor's Damages as set forth in Section 19 hereof or which may otherwise limit or modify an of Lessor's rights or remedies in that section.

(Master Lease Agreement Section 15). This Section bolsters the illusory nature of NY-MAC's right of inspection because NY-MAC is precluded from rejecting the Property under the Lease.

Similar to Section 10.b. the Lease Agreement purportedly neuters NY-MAC's rights to recover damages, even when Onset breaches a warranty. It also precludes NY-MAC from deducting "all or any part of any claimed damages resulting from Lessor's default." *Id.* Even if Onset were in default, according to the Lease NY-MAC would not be able to recover damages for "any reason whatsoever." *Id.* The Lease also purports to preclude NY-MAC from filing a lawsuit for certain failures on the part of Onset. *Id.* In addition, Onset is not required to mitigate its damages. *Id.*

In stark contrast to NY-MAC's purported inability to the access the rights afforded by Utah's UCC, the Master Lease Agreement affords Onset the right to "exercise any other right or remedy which be available to it under the Uniform Commercial Code or any other applicable law." (Master Lease Agreement, Section 19.k). A contract that forces one party to waive all of its rights under the UCC, but then reserves all of the rights under the UCC to other party can only be described as onerous, unfair, and unconscionable, and should not be enforced.

## CONCLUSION

Onset failed to perform its part of the bargain in the lease and the lease should not be enforced against NY-MAC. Onset failed to timely purchase the equipment, and then failed to deliver equipment in working condition. Onset is not the proper party to bring the lawsuit because it assigned the lease to Prime Alliance Bank. Therefore the

Court cannot grant summary judgment because of the possibility of multiple recoveries. The Court should decline to enforce the contract because Onset has acted in bad faith at the very beginning and/or because the contract is unenforceable.

DATED this 25th day of May, 2016.

J. JOYCE & ASSOCIATES

By /s/ Clint A. McAdams
    Joseph J. Joyce
    Clint A. McAdams
    Attorneys for Defendant
    NY-MAC Enterprises, Inc

# Exhibit A

Joseph J. Joyce (Bar No. 4857
Clint A. McAdams (Bar No. 11156)
**J. JOYCE & ASSOCIATES**
Attorneys for Defendant
10813 South River Front Parkway, Suite 230
South Jordan, Utah 84095
Telephone: (801) 302-2255
jjj@jjoycelawfirm.com
cam@jjoycelawfirm.com

---

### IN THE UNITED STATES DISTRICT COURT OF CENTRAL DIVISION

### STATE OF UTAH

| | |
|---|---|
| ONSET FINANCIAL, INC., A UTAH CORPORATION, <br><br> Plaintiff <br><br> vs. <br><br> NY-MAC ENTERPRISES, INC., A MICHIGAN CORPORATION, DOUGLAS J. NYLANDER, AN INDIVIDUAL,, <br><br> Defendants. | **WRITTEN DECLARATION OF DOUG NYLANDER** <br><br><br> Civil No. 2:15-cv-00804 <br><br> Judge David O. Nuffer |

I, Doug Nylander, under penalty of perjury, declare as follows:

1. I am the President of NY-MAC Enterprises, Inc. ("NY-MAC").

2. I am over the age of eighteen and am competent to offer testimony in this matter.

3. The statement contained herein are based either on my own personal knowledge, or upon information reasonably available to me from NY-MAC's business records.

4. In 2014, NY-MAC leased the four Peterbilt trucks and a paver from Lone Star Dirt & Paving ("Lone Star") at issue in the Lease. NY-MAC returned the four Peterbilt trucks to Lone Star in December of 2014, and the paver remained at the Texas DOT yard in Mineral Wells, Texas.

5. In January 2015, NY-MAC and Onset initiated negotiations. NY-MAC authorized Onset to do a credit report. (See Credit Report Authorization and Release dated January 23, 105, attached as Exhibit 1 to Declaration).

6. The Lease was supposed to be completed on February 24, 2015, and in good faith on that date I executed a packet of documents.

7. Onset failed to purchase the equipment on February 24, 2015 so NY-MAC was unable to take possession of the equipment.

8. On March 3, 2105, Onset set up an inspection of the Peterbilt trucks at Lone Star's yard, and the paver at the Texas DOT yard. NY-MAC inspected the equipment, but the inspection did not reveal that one of the Peterbilt's truck's computer was not functioning properly.

9. Onset finally purchased the equipment from Lone Star on March 24, 2015 at which time NY-MAC took possession of the equipment. NY-MAC executed another packet of Lease documents that Onset represented was "closing documents." Those consisted of an Amendment to the Lease Schedule NO. 001 to Master Lease Agreement, Exhibit A to the Lease Schedule, Onset's Summary of the Lease Schedule, Exhibit B Stipulated Loss Schedule, and the Assignment Letter. I signed those documents sometime in June of 2015.

10. NY-MAC had a construction project that it needed the equipment for and lost profit due to Onset's delay in purchasing the equipment.

11. When NY-MAC went to take possession of the equipment, one of the truck's computers was not functioning properly. The truck cannot be used without the computer working properly.

12. NY-MAC paid $3,310.73 in order to fix the truck's computer. (Warren CAT repair bill, attached as Exhibit 2 to Declaration).

13. NY-MAC finally obtained possession of all of the equipment in working condition during the first week of May of 2015.

14. Even though Onset did not purchase the Property until March 24, 2015, and NY-MAC did not receive all of the Property in working condition until early May 2015, Onset invoiced NY-MAC for the time period that NY-MAC did not have all of the equipment in the amount of $37,828.32. (Onset Invoice dated 3/24/2015, attached as Exhibit 3).

15. The March 24, 2015 Invoice charged NY-MAC for rent from February 27, 2015 in the amount of $28,674.91 even though Onset knew that it had not purchased the Property until March 24, 2015, and that NY-MAC had not obtained possession of all of the Property in working condition until early May of 2015.

16. The March 24, 2015 Invoice also charges NY-MAC for Texas Sales Tax two times even though again, NY-MAC had not received the Property until March 24, 2015.

17. When NY-MAC questioned the March 24, 2015 Invoice and charges, Onset sent a Notice of Default on April 13, 2015. (Onset Default Letter, attached as Exhibit 4).

Onset had increased the amount of the first payment from $37,828.32 to $66,047.04 even though Onset charged NY-MAC for amounts it knew were not owed. *Id*.

18. NY-MAC challenged the monthly sales tax assessments being made because the amounts were different without explanation by Onset. Apparently, Onset charged different rates but has been unable or unwilling to explain if it has overcharged for the sales tax.

19. On or about February 27, 2015, Onset notified NY-MAC by letter ("Assignment Letter") that the Lease was assigned and the Property had been sold to Prime Alliance Bank, Inc ("Prime"). (Assignment Letter dated February 27, 2015, attached as Exhibit 5). NY-MAC has made payments to Prime Alliance Bank, Inc. Prime Alliance Bank, Inc. has indicated that if it does not receive payment it will foreclose on the lease.

20. NY-MAC informed Onset that it had construction projects that it wanted the equipment for in other states, and that NY-MAC would be transporting the equipment to other states.

21. Onset charged NY-MAC $26,152.00 to title and license the trucks in the State of Texas, when the trucks were not in Texas. (August 3, 2015 Invoice, Exhibit *); (August 18, 2015 Letter, Exhibit *);

22. When NY-MAC received the Invoice for title and registration fees in Texas, NY-MAC was confused because the equipment had already been registered and had license plates in Michigan.

23.I had NY-MAC's counsel contact Onset and request documentation that the equipment that needed to be titled, had actually been titled and registered in Texas. Despite the request, that documentation was never received.

24.Onset took the position that the Property could not be transported outside of Texas, when Onset knew that NY-MAC intended to transport the Property to other states, and the Lease allowed NY-MAC to take the Property to other states.

25.In 2015, NY-MAC paid to have the equipment registered in Michigan so that license plates could be obtained and placed on the equipment.

26.In 2016, NY-MAC was sent a renewal for the equipment from the State of Michigan, and renewed the registration for the equipment.

27.Onset never invoiced NY-MAC for the registration of the equipment in Michigan, nor did it inform NY-MAC that it had titled the equipment in Michigan. Onset has not provided any documentation that it titled the equipment in Michigan.

28.NY-MAC did not notify Onset that the Vehicles had been titled in the State of Michigan because NY-MAC as Lessee, does not have the title.

29.NY-MAC made all monthly rental payments to Prime until March 2016. NY-MAC did not stop any withdrawal by Prime for monthly rental payments from the electronic transfer of the bank until March 1, 2016.

30.NY-MAC stopped Prime's monthly withdrawal for several reasons including because Onset filed the lawsuit, made false claims in the lawsuit including claiming NY-MAC was in default for taking the Property outside the state of Texas, charged changing

amounts of sales tax without explanation, the potential that both Onset and Prime could

seek to obtain a judgment and because Onset filed the motion for summary judgment.

I declare under penalty of perjury that the foregoing is true and correct.

DATED this 25th day of May, 2016.


By /s/ Douglas J. Nylander
Doug Nylander

EXHIBIT 1



ENTERPRISES

January 23, 2015

## CREDIT REPORT AUTHORIZATION AND RELEASE

Authorization is hereby granted to Onset Financial, Inc. to obtain a standard factual data credit report on my behalf.

My signature below authorizes Onset Financial to obtain from the credit reporting agency a copy of my credit applications, and authorizes the credit reporting agency to obtain information regarding my employment, savings accounts, and outstanding credit accounts (mortgages, auto loans, personal loans, charge cards, credit unions, etc.)

Any reproduction of this credit report authorization and release made by reliable means (for example, photocopy or facsimile) is considered an original.

_____        1-23-15
Guarantor's Signature                              Date

Douglas Nylander
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
08-22-1967

EXHIBIT   2



**WARREN CAT**
PO BOX 842116
DALLAS, TX  75284-2116

432.571.4242 (Credit Dept.)
866.2WARREN (Toll Free)

**SERVICE INVOICE**

| INVOICE NUMBER: | WO020096730 |
| Invoice Date: | 04-07-15 |

**Due**  **$3,310.73**

**Bill To:**

LONE STAR PAVING
11820 UNIVERSITY AVE
LUBBOCK, TX    79423-7412

**Ship To:**

| Make | AA |
|---|---|
| Model | C12 |
| Serial # | 02KS01011 |
| Equip No | MSE2 |
| Machine ID | |
| Meter Reading | 827449.0 |
| PSO/WO | LB77901 |

| Customer | Part | Ordered by | Department | Sales Rep | Division | Store | Terms |
|---|---|---|---|---|---|---|---|
| 5880130 | 22290 | | 04-01-15 | 999 | T | 02 | 2 |

| Quantity | Item | Description | | | Unit Price | Extension |
|---|---|---|---|---|---|---|

COMBINED REPAIR TIMES ENG ELECTRONIC CONT MOD

CUSTOMER COMPLAINT;ENGINE WONT START
CAUSE;ECM FAILED.
CORRECTION;REP^LACED THE ECM.
LOADED TOOLING AND DROVE TO LONESTAR YARD.
REMOVED THE WIRING HARNESS AND INSTALLED A BYPASS
HARNESS.ATTEMPTED TO CONNECT,COULD NOT COMUNICATE.
REMOVED THE ECM AND BROUGHT TO THE SHOP.
PROGRAMED A REMAN ECM AND WENT TO LONESTAR YARD
INSTALLED THE ECM AND STARTED IT.
HAD THE UNIT BROUGHT TO THE SHOP.
CALLIBRATED THE TIMING.REMOVED THE VALVE COVER
AND RETRIEVED THE INJECTOR CALIBRATION NUMBERS
AND PROGRAMED INTO THE ECM.
RETURNED TO THE CUSTOMER.

MSE 2

| 1 | 10R-4090 | CONTROL GP | N | 1830.70 | 1830.70 |
| 1 | | CORE DEPOSIT | N | 610.35 | 610.35 |
| 1- | | CORE RETURN | N | 610.35 | 610.35- |

TOTAL PARTS    SEG. 01    1830.70 *

TOTAL LABOR    SEG. 01    1260.75 *

SEGMENT 01 TOTAL    3091.45 T

SUPPLIES FEE    37.82 T

ENVIROMENTAL FEE    25.22 T

TEXAS STATE TAX    118.36 T
LUBBOCK CITY TAX    28.41 T
LUBBOCK CO TAX TX    9.47 T
* * *    INVOICE COPY    * * *

Go Paperless. Receive statements and invoices online 24/7. Register at  www.warrencat.com/gopaperless

| Parts | $1,830.70 |
| Labor | $1,280.75 |
| Misc | $63.04 |
| Tax | $156.24 |
| **TOTAL** | **$3,310.73** |

WE APPRECIATE YOUR BUSINESS. Your business is important to us and we strive to be your dealership of choice. If we did not meet your expectations, please call 866.2WARREN.

Terms of Payment:   Unless specific terms of payment are stated above, which shall be the governing terms hereof, this invoice shall otherwise be due and payable in full 30 days from this invoice date.
Performance under this invoice along with jurisdiction and venue shall be in Midland County, Texas. Return parts must be accompanied by the packing list or this invoice. Refer to packing list for parts return
policy. ALL PRICES SUBJECT TO CHANGE WITHOUT NOTICE. Acceptance of goods or services constitutes acceptance of the Warren Cat Standard Terms and Conditions which are incorporated by reference
and available at http://www.warrencat.com/terms-conditions or upon request.

Exhibit 3

# onset financial™

## INVOICE

**Bill To:**

NY-MAC Enterprises Inc.

| | |
|---|---|
| Invoice Number: | 19122 |
| Invoice Date: | 3/24/2015 |
| Terms: | ACH |
| Due Date: | 3/27/2015 |
| PO Number: | |

| Description | Amount |
|---|---|
| Deposit to Last ($26,068.10 due, less $25,943.50 previously received) | 124.60 |
| Texas Sales Tax | 2,150.62 |
| Rent Charges from 2/27/14 to 4/1/15 | 28,674.91 |
| Texas Sales Tax | 2,365.69 |
| Documentation Fees | 1,335.00 |
| Disbursement Fees | 250.00 |
| UCC Search and Filing Fees (see attached) | 167.50 |
| Inspection Fees (see attached) | 2,760.00 |

| | |
|---|---|
| Total Amount Due: | $37,828.32 |
| Payments/Credits: | $0.00 |
| Balance Due: | $37,828.32 |

**Remit To:**

Onset Financial, Inc.
10813 S. River Front Pkwy
Suite 450
South Jordan, UT 84095

| | |
|---|---|
| Master Lease Number: | |
| Schedule Number: | Schedule 001 |

**Wire Instructions:**

JP Morgan Chase Bank, N.A.
ABA: 124001545
Account: 818584120
Onset Financial, Inc.

P : 801 878 0600
F : 801 878 0601
10813 S. River Front Pkwy.
Ste. 450
South Jordan, UT 84095
onsetfinancial.com

Exhibit 4

**onsetfinancial**

April 13, 2015

*Via FedEx and Email*

Ny-Mac Enterprises, Inc.
3415 S. Creyts Rd.
Lansing, MI 48917

Attn: Douglas J. Nylander, President
Email: djnylander@aol.com
and
Clint Vannocker, CFO
Email: clint@vannocker.com

     Re:    NOTICE OF DEFAULT

> *Onset Financial, Inc. ("Onset")/* Ny-Mac Enterprises, Inc. *(the*
> *"Lessee")/Master Lease Agreement No.* OFI0745232 *(The "Master Lease") and*
> *Lease Schedule No.* 001 *thereunder (the "Schedule," the Master Lease and the*
> *Schedule are collectively referred to herein as the "Lease")*

Dear Messrs. Nylander and Vannocker:

    We write to give written notice of the Event of Default, more particularly described below, committed by the Lessee related to the Master Lease and the Schedule.

    The Lessee failed to make the first payment due under the Lease. This first payment was due April 1, 2015, and is deemed late and subject to a late fee since it was not paid within ten (10) days after its due date. The amount of the first payment is $66,047.04 (including taxes).

    Failure to make the payment is an Event of Default within the meaning of Section 18 of the Master Lease, as applied to the Schedule. As a result of this default, Onset is entitled to exercise all of its remedies under the Lease, including accelerating all amounts owed under the Lease, including extension periods, demanding immediate repayment of the entire accelerated outstanding balance of all amounts owed under the Lease, together with late fees and costs, and demanding immediate possession of the leased property under the Schedule. Additionally, by failing to make the first payment, Onset can bring claims of fraud and misrepresentation against the Lessee and Guarantor because the evidence supports that Lessee never intended to perform under the Lease after receiving the benefit of the funds.

P | 801 878 0600
F | 801 878 0601
10813 S. River Front Pkwy.
Ste. 450
South Jordan, UT 84095
onsetfinancial.com



Mr. Vannocker and Mr. Matt Burrows, here at our office, discussed this matter and at the end of last week, Mr. Burrows presented an offer to Mr. Vannocker that would grant Lessee an opportunity to pay off the Lease early – even though it is a non-cancelable lease with no prepayment option – if a written agreement can be reached within five (5) days and final payment made by the end of April, 2015. A copy of Mr. Burrow's email outlining these terms is enclosed with this letter. Without waiving any of our rights under the Lease, Onset is willing to temporarily delay exercising its remedies under the Lease while the parties complete the details for this early pay off arrangement. Please be advised, however, that regardless of any prior discussions between the parties, if we have not finalized this early pay off arrangement within five (5) business days, specifically, by April 17, 2015, then Onset will be forced to pursue its legal remedies under the Lease.

If a written early pay off arrangement is not finalized by April 17, 2015, then the Lease will remain in default and all amounts owed under the Lease will remain accelerated and immediately due and payable in full, including late fees and costs, without further notice to Lessee, and Onset will demand immediate surrender of all leased property and pursue all claims available against both the Lessee and the Guarantor of the Lease, including claims of fraud and misrepresentation. The outstanding amounts due under the Lease are subject to augmentation by taxes, late charges and other costs as provided by the Lease.

Nothing in this letter should be construed as a waiver of any right or remedy available to Onset under the Lease, or applicable law, all such rights and remedies being expressly reserved. Without limiting the foregoing, nothing in this letter should be construed as a waiver of any right to demand strict compliance with all Lease requirements, including requirements for timely payment of all amounts owed under the Lease.

Very truly yours,

ONSET FINANCIAL, INC.

Scott Finlinson
General Counsel

SBF/nas
Enclosure
cc:    Matt Burrows

2

# EXHIBIT 5

 onset financial™

February 27, 2015

Douglas J. Nylander
President
Ny-Mac Enterprises, Inc.
3415 S. Creyts Rd.
Lansing, MI 48917

Re:    Lease Schedule No. 001 dated February 24, 2015, as amended by Amendment No. 1 dated February 27, 2015 to Master Lease Agreement No. OFI0745232 dated February 24, 2015, between Onset Financial, Inc. (the "Lessor") and Ny-Mac Enterprises, Inc. (the "Lessee"), hereinafter referred to as the "Lease".

Term:  Thirty-five (35) Base Period Monthly Rental payments remaining
Monthly Rental:  $26,068.10

Dear Mr. Nylander:

Notice is hereby given that effective February 27, 2015, the Lessor has or will assign the Lease and sell the underlying property (the "Property") to Prime Alliance Bank, Inc. (the "Successor Lessor").

Lessee is hereby directed and by signature below agrees, to pay directly to the Successor Lessor at the address set forth below, all amounts required to be paid by the Lessee under the Lease including, but not limited to, all lease payments, casualty, loss or termination payments, accelerated payments upon default, attorney's fees and expenses of collection and enforcement of the Lease.

All amounts from time to time payable under the Lease to the Lessor shall be paid to the Successor Lessor at its office at 1868 South 500 West, Woods Cross, UT 84087 as follows:  Thirty-five (35) consecutive Base Period Monthly Rental payments of $26,068.10 commencing on April 1, 2015 through and including the payment due on February 1, 2018.

Lessee, by signature below, acknowledges notice of the foregoing sale and assignment, and agrees that:  the Lease is in full force and effect and Lessee is not in default thereunder; Lessee's obligations to make all payments under the Lease and the rights of Successor Lessor in and to such amounts, shall be as set forth in the Lease; the Lessee has received no notice of a prior transfer, assignment, hypothecation or pledge of the Lease or of the rents reserved thereunder; and the Lessee will not modify or consent to any modification of the terms of the Lease or enter into any sublease of the Property or assignment of the Lease without the prior written consent of the Successor Lessor; the Successor Lessor shall not have any affirmative obligation under the Lease except to take no action to impair Lessee's quiet enjoyment and use of the Property so long as the Lessee is not in default under the terms of the Lease.

Sincerely,

ONSET FINANCIAL, INC.

By:  _____
       Chantelle Brady
Title:  Vice President

The foregoing is hereby acknowledged and agreed to by the undersigned:

LESSEE: NY-MAC ENTERPRISES, INC.
By:  _____
       Douglas J. Nylander
Title:  President
Date:  _____

P | 801 878 0600
F | 801 878 0901

10813 S. River Front Pkwy.
Ste. 450
South Jordan, UT 84095

onsetfinancial.com

Exhibit B

## MICHIGAN APPORTIONED REGISTRATION CAB CARD     Control: 5009-8103-6718

The vehicle described has been proportionally registered between the State of Michigan and the Jurisdictions shown below.

| Issue Date 04/17/2015 | Valid On 04/17/2015 | Expires On 03/31/2016 |
|---|---|---|

Owner(Lessor)
**LONE STAR DIRT & PAVING CONTRACTING**

Household Carrier Service Representative

| Unit Number 43 | Year 1999 | Make PTRB | Type TK | Fuel D | Plate RB15169 |
|---|---|---|---|---|---|

| Vehicle Identification Number 1XPGDU9XXXD502543 | Unladen Weight 17480 | GVW 54000 |
|---|---|---|

| Account--Fleet--Year--Supp 31949-2-2015-0 | County Code 023 | Number of Seats |
|---|---|---|

Operator(Lessee)
NY MAC ENTERPRISES INC
3415 S CREYTS
LANSING, MI 48917

**MICHIGAN DEPARTMENT OF STATE**
Authority granted under Act No. 124 (PA 1960)
No jurisdictions are to be listed after the row of asterisks or card is invalid. This card must be carried in the vehicle to which it is issued or be subject to confiscation. Copies are not valid.

| AB 24493k | KS 54000 | NH 54000 | SD 54000 |
|---|---|---|---|
| AL 54000 | KY 54000 | NJ 54000 | SK 24493k |
| AR 54000 | LA 54000 | NL 24493k | TN 54000 |
| AZ 54000 | MA 54000 | NM 54000 | TX 54000 |
| BC 24493k | MB 24493k | NS 24493k | UT 54000 |
| CA 54000 | MD 54000 | NV 54000 | VA 54000 |
| CO 54000 | ME 54000 | NY 54000 | VT 54000 |
| CT 54000 | MI 54000 | OH 54000 | WA 54000 |
| DC 54000 | MN 54000 | OK 54000 | WI 54000 |
| DE 54000 | MO 54000 | ON 24493k | WV 54000 |
| FL 54000 | MS 54000 | OR 54000 | WY 54000 |
| GA 54000 | MT 54000 | PA 54000 | ** **** |
| IA 54000 | NB 24493k | PE 24493k | ** **** |
| ID 54000 | NC 54000 | QC 3 AXLE | ** **** |
| IL 54000 | ND 54000 | RI 54000 | ** **** |
| IN 54000 | NE 54000 | SC 54000 | ** **** |



IRP-3 (9/14)

## MICHIGAN APPORTIONED REGISTRATION CAB CARD     Control: 5009-8103-6718

The vehicle described has been proportionally registered between the State of Michigan and the Jurisdictions shown below.

| Issue Date 04/17/2015 | Valid On 04/17/2015 | Expires On 03/31/2016 |
|---|---|---|

Owner(Lessor)
**LONE STAR DIRT & PAVING CONTRACTING**

Household Carrier Service Representative

| Unit Number 43 | Year 1999 | Make PTRB | Type TK | Fuel D | Plate RB15169 |
|---|---|---|---|---|---|

| Vehicle Identification Number 1XPGDU9XXXD502543 | Unladen Weight 17480 | GVW 54000 |
|---|---|---|

| Account--Fleet--Year--Supp 31949-2-2015-0 | County Code 023 | Number of Seats |
|---|---|---|

Operator(Lessee)
NY MAC ENTERPRISES INC
3415 S CREYTS
LANSING, MI 48917

**MICHIGAN DEPARTMENT OF STATE**
Authority granted under Act No. 124 (PA 1960)
No jurisdictions are to be listed after the row of asterisks or card is invalid. This card must be carried in the vehicle to which it is issued or be subject to confiscation. Copies are not valid.

| AB 24493k | KS 54000 | NH 54000 | SD 54000 |
|---|---|---|---|
| AL 54000 | KY 54000 | NJ 54000 | SK 24493k |
| AR 54000 | LA 54000 | NL 24493k | TN 54000 |
| AZ 54000 | MA 54000 | NM 54000 | TX 54000 |
| BC 24493k | MB 24493k | NS 24493k | UT 54000 |
| CA 54000 | MD 54000 | NV 54000 | VA 54000 |
| CO 54000 | ME 54000 | NY 54000 | VT 54000 |
| CT 54000 | MI 54000 | OH 54000 | WA 54000 |
| DC 54000 | MN 54000 | OK 54000 | WI 54000 |
| DE 54000 | MO 54000 | ON 24493k | WV 54000 |
| FL 54000 | MS 54000 | OR 54000 | WY 54000 |
| GA 54000 | MT 54000 | PA 54000 | ** **** |
| IA 54000 | NB 24493k | PE 24493k | ** **** |
| ID 54000 | NC 54000 | QC 3 AXLE | ** **** |
| IL 54000 | ND 54000 | RI 54000 | ** **** |
| IN 54000 | NE 54000 | SC 54000 | ** **** |



IRP-3 (9/14)

# 2016



MI   RB15169
16-03
GVW   54 IRP

## To Apply Sticker:

1. Clean and dry upper right corner of plate
2. Bend at dotted line and carefully peel until tab is fully removed.
3. Your plate number is printed on your tab. Match your tab to the correct plate.

## MICHIGAN APPORTIONED REGISTRATION CAB CARD     Control: 5009-8103-6721

The vehicle described has been proportionally registered between the State of Michigan and the Jurisdictions shown below.

| Issue Date 04/17/2015 | Valid On 04/17/2015 | Expires On 03/31/2016 |
|---|---|---|

**Owner(Lessor)**
LONE STAR DIRT & PAVING CONTRACTING
Household Carrier Service Representative

| Unit Number 53 | Year 1999 | Make PTRB | Type TK | Fuel D | Plate RB15170 |
|---|---|---|---|---|---|

| Vehicle Identification Number 1XPGDU9X2XD502553 | Unladen Weight 17300 | GVW 54000 |
|---|---|---|

| Account--Fleet--Year--Supp 31949-2-2015-0 | County Code 023 | Number of Seats |
|---|---|---|

**Operator(Lessee)**
NY MAC ENTERPRISES INC
3415 S CREYTS
LANSING, MI 48917

**MICHIGAN DEPARTMENT OF STATE**
Authority granted under Act No. 124 (PA 1960)
No jurisdictions are to be listed after the row of asterisks or card is invalid. This card must be carried in the vehicle to which it is issued or be subject to confiscation. Copies are not valid.

| AB 24493k | KS 54000 | NH 54000 | SD 54000 |
|---|---|---|---|
| AL 54000 | KY 54000 | NJ 54000 | SK 24493k |
| AR 54000 | LA 54000 | NL 24493k | TN 54000 |
| AZ 54000 | MA 54000 | NM 54000 | TX 54000 |
| BC 24493k | MB 24493k | NS 24493k | UT 54000 |
| CA 54000 | MD 54000 | NV 54000 | VA 54000 |
| CO 54000 | ME 54000 | NY 54000 | VT 54000 |
| CT 54000 | MI 54000 | OH 54000 | WA 54000 |
| DC 54000 | MN 54000 | OK 54000 | WI 54000 |
| DE 54000 | MO 54000 | ON 24493k | WV 54000 |
| FL 54000 | MS 54000 | OR 54000 | WY 54000 |
| GA 54000 | MT 54000 | PA 54000 | ** **** |
| IA 54000 | NB 24493k | PE 24493k | ** **** |
| ID 54000 | NC 54000 | QC 3 AXLE | ** **** |
| IL 54000 | ND 54000 | RI 54000 | ** **** |
| IN 54000 | NE 54000 | SC 54000 | ** **** |



IRP-3 (9/14)

---

## MICHIGAN APPORTIONED REGISTRATION CAB CARD     Control: 5009-8103-6721

The vehicle described has been proportionally registered between the State of Michigan and the Jurisdictions shown below.

| Issue Date 04/17/2015 | Valid On 04/17/2015 | Expires On 03/31/2016 |
|---|---|---|

**Owner(Lessor)**
LONE STAR DIRT & PAVING CONTRACTING
Household Carrier Service Representative

| Unit Number 53 | Year 1999 | Make PTRB | Type TK | Fuel D | Plate RB15170 |
|---|---|---|---|---|---|

| Vehicle Identification Number 1XPGDU9X2XD502553 | Unladen Weight 17300 | GVW 54000 |
|---|---|---|

| Account--Fleet--Year--Supp 31949-2-2015-0 | County Code 023 | Number of Seats |
|---|---|---|

**Operator(Lessee)**
NY MAC ENTERPRISES INC
3415 S CREYTS
LANSING, MI 48917

**MICHIGAN DEPARTMENT OF STATE**
Authority granted under Act No. 124 (PA 1960)
No jurisdictions are to be listed after the row of asterisks or card is invalid. This card must be carried in the vehicle to which it is issued or be subject to confiscation. Copies are not valid.

| AB 24493k | KS 54000 | NH 54000 | SD 54000 |
|---|---|---|---|
| AL 54000 | KY 54000 | NJ 54000 | SK 24493k |
| AR 54000 | LA 54000 | NL 24493k | TN 54000 |
| AZ 54000 | MA 54000 | NM 54000 | TX 54000 |
| BC 24493k | MB 24493k | NS 24493k | UT 54000 |
| CA 54000 | MD 54000 | NV 54000 | VA 54000 |
| CO 54000 | ME 54000 | NY 54000 | VT 54000 |
| CT 54000 | MI 54000 | OH 54000 | WA 54000 |
| DC 54000 | MN 54000 | OK 54000 | WI 54000 |
| DE 54000 | MO 54000 | ON 24493k | WV 54000 |
| FL 54000 | MS 54000 | OR 54000 | WY 54000 |
| GA 54000 | MT 54000 | PA 54000 | ** **** |
| IA 54000 | NB 24493k | PE 24493k | ** **** |
| ID 54000 | NC 54000 | QC 3 AXLE | ** **** |
| IL 54000 | ND 54000 | RI 54000 | ** **** |
| IN 54000 | NE 54000 | SC 54000 | ** **** |



IRP-3 (9/14)

---

# 2016



MI    RB15170
16-03
GVW    54 IRP

## To Apply Sticker:

1. Clean and dry upper right corner of plate
2. Bend at dotted line and carefully peel until tab is fully removed.
3. Your plate number is printed on your tab. Match your tab to the correct plate.

## MICHIGAN APPORTIONED REGISTRATION CAB CARD   Control: 5009-8103-6747

The vehicle described has been proportionally registered between the State of Michigan and the Jurisdictions shown below.

| Issue Date 04/17/2015 | Valid On 04/17/2015 | Expires On 03/31/2016 |
|---|---|---|

Owner(Lessor)
**LONE STAR DIRT & PAVING CONTRACTING**
Household Carrier Service Representative

| Unit Number 54 | Year 1999 | Make PTRB | Type TK | Fuel D | Plate RB15171 |
|---|---|---|---|---|---|

| Vehicle Identification Number 1XPGDU9X4XD502554 | Unladen Weight 17480 | GVW 54000 |
|---|---|---|

| Account--Fleet--Year--Supp 31949-2-2015-0 | County Code 023 | Number of Seats |
|---|---|---|

Operator(Lessee)
NY MAC ENTERPRISES INC
3415 S CREYTS
LANSING, MI 48917

**MICHIGAN DEPARTMENT OF STATE**
Authority granted under Act No. 124 (PA 1960)
No jurisdictions are to be listed after the row of asterisks or card is invalid. This card must be carried in the vehicle to which it is issued or be subject to confiscation. Copies are not valid.

| AB | 24493k | KS | 54000 | NH | 54000 | SD | 54000 |
|---|---|---|---|---|---|---|---|
| AL | 54000 | KY | 54000 | NJ | 54000 | SK | 24493k |
| AR | 54000 | LA | 54000 | NL | 24493k | TN | 54000 |
| AZ | 54000 | MA | 54000 | NM | 54000 | TX | 54000 |
| BC | 24493k | MB | 24493k | NS | 24493k | UT | 54000 |
| CA | 54000 | MD | 54000 | NV | 54000 | VA | 54000 |
| CO | 54000 | ME | 54000 | NY | 54000 | VT | 54000 |
| CT | 54000 | MI | 54000 | OH | 54000 | WA | 54000 |
| DC | 54000 | MN | 54000 | OK | 54000 | WI | 54000 |
| DE | 54000 | MO | 54000 | ON | 24493k | WV | 54000 |
| FL | 54000 | MS | 54000 | OR | 54000 | WY | 54000 |
| GA | 54000 | MT | 54000 | PA | 54000 | ** | **** |
| IA | 54000 | NB | 24493k | PE | 24493k | ** | **** |
| ID | 54000 | NC | 54000 | QC | 3 AXLE | ** | **** |
| IL | 54000 | ND | 54000 | RI | 54000 | ** | **** |
| IN | 54000 | NE | 54000 | SC | 54000 | ** | **** |



IRP-3 (9/14)

---

## MICHIGAN APPORTIONED REGISTRATION CAB CARD   Control: 5009-8103-6747

The vehicle described has been proportionally registered between the State of Michigan and the Jurisdictions shown below.

| Issue Date 04/17/2015 | Valid On 04/17/2015 | Expires On 03/31/2016 |
|---|---|---|

Owner(Lessor)
**LONE STAR DIRT & PAVING CONTRACTING**
Household Carrier Service Representative

| Unit Number 54 | Year 1999 | Make PTRB | Type TK | Fuel D | Plate RB15171 |
|---|---|---|---|---|---|

| Vehicle Identification Number 1XPGDU9X4XD502554 | Unladen Weight 17480 | GVW 54000 |
|---|---|---|

| Account--Fleet--Year--Supp 31949-2-2015-0 | County Code 023 | Number of Seats |
|---|---|---|

Operator(Lessee)
NY MAC ENTERPRISES INC
3415 S CREYTS
LANSING, MI 48917

**MICHIGAN DEPARTMENT OF STATE**
Authority granted under Act No. 124 (PA 1960)
No jurisdictions are to be listed after the row of asterisks or card is invalid. This card must be carried in the vehicle to which it is issued or be subject to confiscation. Copies are not valid.

| AB | 24493k | KS | 54000 | NH | 54000 | SD | 54000 |
|---|---|---|---|---|---|---|---|
| AL | 54000 | KY | 54000 | NJ | 54000 | SK | 24493k |
| AR | 54000 | LA | 54000 | NL | 24493k | TN | 54000 |
| AZ | 54000 | MA | 54000 | NM | 54000 | TX | 54000 |
| BC | 24493k | MB | 24493k | NS | 24493k | UT | 54000 |
| CA | 54000 | MD | 54000 | NV | 54000 | VA | 54000 |
| CO | 54000 | ME | 54000 | NY | 54000 | VT | 54000 |
| CT | 54000 | MI | 54000 | OH | 54000 | WA | 54000 |
| DC | 54000 | MN | 54000 | OK | 54000 | WI | 54000 |
| DE | 54000 | MO | 54000 | ON | 24493k | WV | 54000 |
| FL | 54000 | MS | 54000 | OR | 54000 | WY | 54000 |
| GA | 54000 | MT | 54000 | PA | 54000 | ** | **** |
| IA | 54000 | NB | 24493k | PE | 24493k | ** | **** |
| ID | 54000 | NC | 54000 | QC | 3 AXLE | ** | **** |
| IL | 54000 | ND | 54000 | RI | 54000 | ** | **** |
| IN | 54000 | NE | 54000 | SC | 54000 | ** | **** |



IRP-3 (9/14)

---

# 2016



MI   RB15171
16-03
GVW   54 IRP

## To Apply Sticker:

1. Clean and dry upper right corner of plate
2. Bend at dotted line and carefully peel until tab is fully removed.
3. Your plate number is printed on your tab. Match your tab to the correct plate.

## MICHIGAN APPORTIONED REGISTRATION CAB CARD
Control: 5009-8103-6750

The vehicle described has been proportionally registered between the State of Michigan and the Jurisdictions shown below.

| Issue Date 04/17/2015 | Valid On 04/17/2015 | | Expires On 03/31/2016 |
| --- | --- | --- | --- |

| Owner(Lessor) |
| --- |
| LONE STAR DIRT & PAVING CONTRACTING |

| Household Carrier Service Representative |
| --- |

| Unit Number 55 | Year 1999 | Make PTRB | Type TK | Fuel D | Plate RB15172 |
| --- | --- | --- | --- | --- | --- |

| Vehicle Identification Number 1XPGDU9X6XD502555 | Unladen Weight 17480 | GVW 54000 |
| --- | --- | --- |

| Account--Fleet--Year--Supp 31949-2-2015-0 | County Code 023 | Number of Seats |
| --- | --- | --- |

Operator(Lessee)
NY MAC ENTERPRISES INC
3415 S CREYTS
LANSING, MI 48917

**MICHIGAN DEPARTMENT OF STATE**
Authority granted under Act No. 124 (PA 1960)
No jurisdictions are to be listed after the row of asterisks or card is invalid. This card must be carried in the vehicle to which it is issued or be subject to confiscation. Copies not valid.

| AB 24493k | KS 54000 | NH 54000 | SD 54000 |
| --- | --- | --- | --- |
| AL 54000 | KY 54000 | NJ 54000 | SK 24493k |
| AR 54000 | LA 54000 | NL 24493k | TN 54000 |
| AZ 54000 | MA 54000 | NM 54000 | TX 54000 |
| BC 24493k | MB 24493k | NS 24493k | UT 54000 |
| CA 54000 | MD 54000 | NV 54000 | VA 54000 |
| CO 54000 | ME 54000 | NY 54000 | VT 54000 |
| CT 54000 | MI 54000 | OH 54000 | WA 54000 |
| DC 54000 | MN 54000 | OK 54000 | WI 54000 |
| DE 54000 | MO 54000 | ON 24493k | WV 54000 |
| FL 54000 | MS 54000 | OR 54000 | WY 54000 |
| GA 54000 | MT 54000 | PA 54000 | ** **** |
| IA 54000 | NB 24493k | PE 24493k | ** **** |
| ID 54000 | NC 54000 | QC 3 AXLE | ** **** |
| IL 54000 | ND 54000 | RI 54000 | ** **** |
| IN 54000 | NE 54000 | SC 54000 | ** **** |



IRP-3 (9/14)

## MICHIGAN APPORTIONED REGISTRATION CAB CARD
Control: 5009-8103-6750

The vehicle described has been proportionally registered between the State of Michigan and the Jurisdictions shown below.

| Issue Date 04/17/2015 | Valid On 04/17/2015 | | Expires On 03/31/2016 |
| --- | --- | --- | --- |

| Owner(Lessor) |
| --- |
| LONE STAR DIRT & PAVING CONTRACTING |

| Household Carrier Service Representative |
| --- |

| Unit Number 55 | Year 1999 | Make PTRB | Type TK | Fuel D | Plate RB15172 |
| --- | --- | --- | --- | --- | --- |

| Vehicle Identification Number 1XPGDU9X6XD502555 | Unladen Weight 17480 | GVW 54000 |
| --- | --- | --- |

| Account--Fleet--Year--Supp 31949-2-2015-0 | County Code 023 | Number of Seats |
| --- | --- | --- |

Operator(Lessee)
NY MAC ENTERPRISES INC
3415 S CREYTS
LANSING, MI 48917

**MICHIGAN DEPARTMENT OF STATE**
Authority granted under Act No. 124 (PA 1960)
No jurisdictions are to be listed after the row of asterisks or card is invalid. This card must be carried in the vehicle to which it is issued or be subject to confiscation. Copies not valid.

| AB 24493k | KS 54000 | NH 54000 | SD 54000 |
| --- | --- | --- | --- |
| AL 54000 | KY 54000 | NJ 54000 | SK 24493k |
| AR 54000 | LA 54000 | NL 24493k | TN 54000 |
| AZ 54000 | MA 54000 | NM 54000 | TX 54000 |
| BC 24493k | MB 24493k | NS 24493k | UT 54000 |
| CA 54000 | MD 54000 | NV 54000 | VA 54000 |
| CO 54000 | ME 54000 | NY 54000 | VT 54000 |
| CT 54000 | MI 54000 | OH 54000 | WA 54000 |
| DC 54000 | MN 54000 | OK 54000 | WI 54000 |
| DE 54000 | MO 54000 | ON 24493k | WV 54000 |
| FL 54000 | MS 54000 | OR 54000 | WY 54000 |
| GA 54000 | MT 54000 | PA 54000 | ** **** |
| IA 54000 | NB 24493k | PE 24493k | ** **** |
| ID 54000 | NC 54000 | QC 3 AXLE | ** **** |
| IL 54000 | ND 54000 | RI 54000 | ** **** |
| IN 54000 | NE 54000 | SC 54000 | ** **** |



IRP-3 (9/14)

**2016**



MI   RB15172
16-03
GVW   54 IRP

### To Apply Sticker:

1. Clean and dry upper right corner of plate
2. Bend at dotted line and carefully peel until tab is fully removed.
3. Your plate number is printed on your tab. Match your tab to the correct plate.

Exhibit C

## onsetfinancial™

## INVOICE

**Bill To:**
Ny-Mac Enterprises, Inc.
3415 S. Creyts Rd.
Lansing, MI 48917

| | |
|---|---|
| Invoice Number: | 19533 |
| Invoice Date: | 8/3/2015 |
| Terms: | ACH |
| Due Date: | 8/7/2015 |
| PO Number: | |

| Description | Amount |
|---|---|
| Upfront Sales Tax - Texas | 20,000.00 |
| Title and Licensing Fees | 6,152.00 |

| | |
|---|---|
| Total Amount Due: | $26,152.00 |
| Payments/Credits: | $0.00 |
| Balance Due: | $26,152.00 |

**Remit To:**
Onset Financial, Inc.
10813 S. River Front Pkwy
Suite 450
South Jordan, UT  84095

Master Lease Number:
Schedule Number:        Schedule 001

**Wire Instructions:**
JP Morgan Chase Bank, N.A.
ABA: 124001545
Account: 818584120
SWIFT Code: CHASUS33
Onset Financial, Inc.

P   801 878 0500
F   801 878 050
10813 S. River Front Pkwy,
Ste. 450
South Jordan, UT 84095
onsetfinancial.com

# Exhibit D



Michael D. Mayfield
ATTORNEY AT LAW

PO Box 45385
Salt Lake City, Utah
84145-0385

36 South State Street
Suite 1400
Salt Lake City, Utah
84111

801 532-1500 FIRM
801 323-3373 DIRECT
801 532-7543 FAX
mmayfield@rqn.com
www.rqn.com

August 18, 2015

**VIA U.S. MAIL and EMAIL**

Mark M. Cunningham, Esq.
KERR RUSSELL
500 Woodward Avenue
Suite 2500
Detroit, Michigan 48226-3427

> *Re:*    *Onset Financial, Inc./Ny-Mac Enterprises, Inc.*
> *Master Lease Agreement No. OFI0745232 ("**Master Lease**") and*
> *Lease Schedule No. 001 thereunder ("**Schedule**")*

Dear Mark:

As you know, this firm represents Onset Financial, Inc. ("**Onset**"). I am writing to you as legal counsel for Ny-Mac Enterprises, Inc. ("**Ny-Mac**") and Douglas J. Nylander to give formal notice of Ny-Mac's default of its obligations under the above-described Master Lease Agreement and Schedule (collectively referred to as the "**Lease**"). If you no longer represent Ny-Mac or Mr. Nylander, please let me know and I will address future correspondence to them directly.

Ny-Mac is in breach of the Lease for failing to pay taxes and fees connected with various vehicles that are subject to the Lease. When Onset registered the vehicles with the State of Texas, the state assessed sales taxes in the amount of $20,000 and title and licensing fees in the amount of $6,152.00. Ny-Mac is responsible for these fees and taxes. On August 3, 2015, after paying the fees and taxes for Ny-Mac, Onset sent the enclosed Invoice No. 19533 to Ny-Mac. On August 7, 2015, Onset attempted to make an ACH withdrawal for reimbursement of the fees and taxes from Ny-Mac. Ny-Mac rejected the ACH withdrawal. Ny-Mac's failure to reimburse Onset for fees and taxes assessed by the State of Texas is a material breach of the Lease. Ny-MAC is also in breach of the Lease because it failed to provide Onset with interim financials and because it has allowed a federal tax lien to be recorded against its real property. These acts are additional material breaches of the Lease.

As a result of these defaults, Onset is entitled to exercise all of its remedies under the Lease, including demanding immediate repayment of the entire outstanding balances of all of the Lease Schedules under the Master Lease Agreement and demanding immediate possession of the leased Property under all of the Lease Schedules under the Master Lease Agreement. Notwithstanding, Onset will allow Ny-Mac to cure these defaults by paying $26,152.00 to Onset, by providing the required interim financials, and by

satisfying and causing the removal of the federal tax lien.  These actions must take place on or before August 26, 2015.

If Ny-Mac fails to do so, Onset will, without further notice to Ny-Mac, declare and deem all amounts owed on the Lease to be immediately due and payable in full, and will demand immediate surrender of all of the leased Property.  We therefore encourage Ny-Mac and Mr. Nylander to comply with Onset's demands as set forth in this letter on or before August 26, 2015.

Nothing in this letter should be construed as a waiver of any right or remedy available to Onset under the Lease, or applicable law, all such rights and remedies being expressly reserved.  Without limiting the foregoing, nothing in this letter should be construed as a waiver of any right to demand strict compliance with all Lease requirements, including requirements for timely payment of all amounts owed under the Lease.

Sincerely,

RAY QUINNEY & NEBEKER P.C.

Michael D. Mayfield

cc:    Scott Finlinson, General Counsel

1340306